**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| EVAN SCHMALSHOF and | ) | |
| SCHMALSHOF FAMILY | ) | |
| TRANSPORT LLC, | ) | |
| | ) | |
|     Plaintiffs, | ) | Case # |
| v. | ) | |
| | ) | |
| McDONOUGH COUNTY, NICHOLAS | ) | |
| PETITGOUT, individually and not in his | ) | |
| Official capacity, | ) | |
| | ) | |
|     Defendants. | ) | |

## <u>COMPLAINT</u>

Now comes the Plaintiffs, EVAN SCHMALSHOF and SCHMALSHOF FAMILY TRANSPORT LLC, by and through their attorneys, Netzky Olswang Law Group LLC, complaining of the Defendants, McDonough County and NICHOLAS PETITGOUT and states as follows:

### NATURE OF ACTION (SHORT STATEMENT OF THE CASE)

1.      This Complaint contains six (6) counts related to the ongoing efforts of Defendant **NICHOLAS PETITGOUT** (Hereinafter "Petitgout"), Sheriff of McDonough County Illinois to deprive **EVAN SCHMALSHOF** (hereinafter "Evan") of his right of free speech guaranteed to him under the 1st Amendment.  As part of Petitgout's overall scheme to harass Evan out of his free speech rights, Petitgout has systematically oppressed Evan in a variety of ways.  As part of Petitgout's scheme and artifice to harass Evan, Petitgout engaged in the following: A) suspended Evan from lawful employment under a pretext of his purported violation of a policy of employment when in fact Evan followed the policy and procedures adopted by Petitgout; B) improperly used the Law Enforcement Data System (LEADS) to obtain use and disclose

personal information concerning and belonging to Plaintiffs; C) knowing of Evan's contractual relationship with the Village of Blandinsville, interfered with Evan's employment contract as the Blandinsville Police Chief by prohibiting him from delivering up criminal defendants at the McDonough county jail under the color of state authority, when in fact no such authority exists; D) interfered with Evan's statutory rights to obtain information pursuant to the federal and Illinois Freedom of Information Acts by commanding county employees to use electronic devices intended to delete public records.

2.      Count I is an action arising under the 1st Amendment of the Constitution of the United States of America.  Count II is an action arising under the Drivers' Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq*., ("DPPA") and seeks a monetary remedy against Defendant, NICHOLAS PETITGOUT, for unlawfully obtaining and using personal information from motor vehicle records concerning Plaintiffs in the amount of statutory damages and attorney fees to enforce Plaintiffs' rights under the DPPA for each act whereby the Defendant has unlawfully obtained, used or disclosed personal information from a motor vehicle record associated with the Evan, other damages for compensable injuries to Evan, attorney fees and costs, to remedy Defendant's violations of the Drivers' Privacy Protection Act, 18 U.S.C. § 2721 *et seq*., as it relates to Evan.  Count III seeks injunctive relief to prevent Petitgout from continuing his interference with Evan's contract of employment with the Village of Blandinsville.  Count IV seeks damages for intentional infliction of emotional distress (IIED).  Count V seeks damages for defamation under the theory of false light privacy.  Count VI seeks a remedy against McDonough County under 42 USC 1983.

2

**JURISDICTION, VENUE & PARTIES**

3.      This Court has jurisdiction to hear this Complaint because the claim arises under a federal statute and this Court has jurisdiction pursuant to the DPPA, 18 U.S.C. § 2724(a) (Conferring jurisdiction on the United States District Courts for actions under the DPPA, 18 U.S.C. § 2721 *et seq.*) and 28 U.S.C. §1331, federal question jurisdiction, related to Evan's First Amendment right of free speech and 42 U.S.C. 1983, and state pendent jurisdiction pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Central District of Illinois because, amongst other things, a substantial part of the events or omissions giving rise to the claims occurred in this district, and the Defendant, PETITGOUT, maintains his principal residence in this District and regularly conducts his activities in this District, and the Defendant McDonough County is situated in this district and regularly conducts business in this District.

5.      Evan was a McDonough County Deputy Sheriff up to 1/26/24 and at all times relevant Chief of the Blandinsville Police Department and resides in the Central District of Illinois.

6.      Defendant PETITGOUT resides within the Central District of Illinois.

7.      The Defendant McDonough County is a unit of government in the Central District of Illinois.

8.      A substantial portion of the events giving rise to these claims occurred in the Central District of Illinois and in particular in McDonough County. Venue is, therefore, properly placed in this Court pursuant to 28 U.S.C. § 1391.

3

## Count I
### (Violation of 1st Amendment of the Constitution of the United States of America)

9. Plaintiffs restate and re-alleges paragraphs 1-8 as if fully restated in this count in their entirety.

10. Evan provided truthful information when he was interviewed concerning the reality of the verbal instructions and treatment of matters contrary to the written policies of the McDonough County Sheriff's Office. Evan's truthful testimony was against the interests of Petitgout and the McDonough County Sheriff's Office, which is now a defendant in a separate civil action. Immediately thereafter, Evan's truthful statements, Petitgout commenced the harassment of Evan as set forth in this Complaint.

11. As part of Petitgout's scheme to control and harass Evan, Petitgout instructed Evan that he was to make no statement concerning anything related to the McDonough County Sheriff's department even though there was no lawful basis for Petitgout to command Evan to a limitation on Evan's speech.

12. Petitgout's commands to Evan served to chill Evan's speech and did in fact chill Evan's speech.

13. Upon information and belief of Defendant, Petitgout, instructed others in the McDonough County Sheriff's Department not to communicate or have any contact with Evan including instructing Evan's union representative, Jay Titus, not to speak with Evan.

14. Defendant Petitgout blocked Evan from the McDonough County Sheriff's Office Facebook page prohibiting Evan from obtaining information concerning the McDonough County Sheriff's Office that would be available to any other not blocked person.

15. Petitgout further instructed Evan not to identify himself as a Sheriff's Deputy even though, Evan remained a Sheriff's deputy at the time of the instructions. Petitgout further

attempted to interfere with Evan's interest in having union representation with the Fraternal Order of Police efforts to represent Evan by communicating to his union representative words and ideas to imply that the union representative would suffer retaliation for assisting Evan.

16. Despite Petitgout's command that Evan not hold himself out as a Deputy Sheriff, Petitgout continues to represent to the public that Evan is a Deputy Sheriff in the McDonough County Sheriff's Department. See Exhibit A.

17. In an effort to further pressure Evan from discussing irregularities in the McDonough County's Sheriff's Office, Petitgout, knowing that Evan was the Blandinsville Police Chief, prohibited Evan from delivering up criminal defendants into the McDonough County Jail and cut off Evan and the rest of the Blandinsville Police Department from access to criminal database`s and the McDonough County warrant list.

18. Petitgout further communicated to officials of the Village of Blandinsville that the privileges to deliver up criminal defendants to the county jail and access to criminal intelligence databases would be restored if the Village terminated Evan from his position as Chief of Police. Petitgout contacted Blandinsville Police Committee Chairman and questioned the Chairman about why the Village retains Evan as Police Chief.

**Wherefore,** Evan prays that this honorable court grant judgment on Evans' behalf to the following effect:

A. Granting judgment in favor of Evans against Defendants in the amount determined at trial of this matter in an amount in excess of $1,000,000.00 or such other amount deemed just and equitable.

B. Such other relief as this Court deems appropriate and just.

5

**COUNT II**
**(Violation of the Drivers' Privacy Protection Act, 18 U.S.C. § 2721 *et seq)***

19.    Evan restates and re-alleges the allegations of paragraphs 1-18 as if fully set out herein in this Count I.

20.    This action arises under a federal statute and this Court has jurisdiction pursuant to the DPPA, 18 U.S.C. § 2724(a) (conferring jurisdiction on the United States District Courts for actions under the DPPA) and 28 U.S.C. §1331 (Federal question jurisdiction). This is an action pursuant to the Drivers' Privacy Protection Act, 18 U.S.C. § 2721 *et seq*. (the "DPPA"). Evan brings this action on their own behalf to remedy the violation under the DPPA because Petitgout obtained and used Plaintiffs' "personal information" from a "motor vehicle record" maintained by the State of Illinois within the meaning of the DPPA, 18 U.S.C. § 2725 for an unauthorized use.

21. Plaintiffs have not provided "express consent" within the meaning of the DPPA, 18 U.S.C. § 2725 to either the State of Illinois or the Defendant for Defendant to obtain Plaintiffs' "personal information" for purposes not enumerated in the DPPA, 18 U.S.C. § 2721(b), and whose "personal information" has been knowingly obtained or used by Defendant Petitgout within the meaning of the DPPA, 18 U.S.C. § 2724, for purposes not authorized by the DPPA.

22. The DPPA was enacted as part of omnibus crime legislation passed by Congress in 1993, known as the Violent Crime Control and Law Enforcement Act of 1993, in part to provide privacy protections to individuals' personal information and highly restricted personal information as a result, in part, of several well publicized incidents in which criminals had used publicly available motor vehicle records to identify and stalk their victims. Those incidents included:

6

a.      The murder of actress Rebecca Schaeffer in California by a man who had obtained Schaeffer's address from California's Department of Motor Vehicles;

b.      Home invasion robberies by a gang of Iowa teenagers who identified their victims by copying the license plate numbers of expensive automobiles and used those license plate numbers to obtain the addresses of the vehicle owners from the Iowa Department of Transportation; and

c.      The Arizona murder of a woman whose home address was identified from the Arizona Department of Motor Vehicles.

23.     As originally enacted in 1993, the DPPA made it unlawful for any person to *obtain* personal information derived from any motor vehicle record, unless the subject of the information had authorized such disclosure or the request/disclosure qualified under a recognized exception, including use by a federal or state agency, use in connection with motor vehicle and driver safety, use in court proceedings, use in certain research activities relating to certain insurance matters and use for verification of personal information submitted by the subject of such information. Use of personal information for marketing activities was permitted, so long as the States had provided individuals identified in motor vehicle records with the opportunity to prohibit such disclosures. This "Opt Out" provision effectively gave the individuals the right to prohibit the States from disclosing personal information for marketing purposes. 18 U.S.C. §2721 (1993).

24.     Congress significantly amended the DPPA in 1999 by eliminating the "opt out" provision for marketing activities.  Use or obtaining of personal information contained in motor vehicle records for surveys, marketing or solicitations was thereafter permitted only if the State obtained the express consent of the person to whom such information pertained. Similarly, a

requester of personal information was allowed to obtain such information for any purpose, if the requestor demonstrated he or she had obtained the express consent of the person to whom such personal information pertained. 18 U.S.C. 2721 (b)(13), (14) (1999).  By changing the "opt out" exceptions of the 1993 Act to an "opt in" exception in the 1999 DPPA amendments, Congress significantly reduced the categories of persons whose personal information may be lawfully obtained under the Act.  The effective date of the 1999 amendments to the DPPA was June 1, 2000.  Plaintiffs have not given their express consent to the use of either plaintiff's "personal information" to either the State of Illinois or to Petitgout.

25.    Under the DPPA a "person" who knowingly obtains, uses *or* discloses "personal information" concerning another from a motor vehicle record for a purpose not permitted by the DPPA shall be liable to the individual to whom the information pertains. 18 U.S.C. § 2724. The DPPA provides for liquidated damages in the amount of $2,500.00 for each violation of the DPPA, reasonable attorney fees and costs, in addition to punitive damages upon a showing of a willful or reckless disregard of the law, and other relief including preliminary and equitable relief. 18 U.S.C. §2724(b).  In this case, Defendant obtained "personal information" of Evan from a motor vehicle record and specifically obtained Evan's name, address, driver`s license number, and date of birth.

26.    A "person" under the DPPA is defined as "an individual, organization or entity, but does not include a state or agency thereof." 18 U.S.C. §2721(2).

27.    Under the DPPA it is unlawful for a "person" to make false representations to obtain any personal information from an individual's motor vehicle record. 18 U.S.C. §2722(b).

28.    The Drivers' Privacy Protection Act, 18 U.S.C. § 2721, defines the term "personal information" as:

8

Information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

29.     Defendant, Petitgout has obtained and used personal information from motor vehicle records relating to Plaintiffs for purposes not permitted under the DPPA, including but not limited to the following:

a.      On August 16, 2023 Defendant accessed the Illinois State Police LAW ENFORCEMENT AGENCIES DATA SYSTEM known as "LEADS" and ran SCHMALSHOF FAMILY TRANSPORT LLC's license plates and Evan`s driver`s license to obtain personal information associated with Plaintiffs from a motor vehicle record associated with SCHMALSHOF FAMILY TRANSPORT LLC's license plate and Evan`s Driver`s License.

b.      Defendant obtained the personal information as that term is defined in the DPPA, from Motor Vehicle Records associated with the SCHMALSHOF FAMILY TRANSPORT LLC's vehicle and Evan`s driver`s license in violation of the Drivers' Privacy Protection Act, 18 U.S.C. § 2721 *et seq*, including, but not limited to the make, year, vehicle identification number, and owner's name, address, zip code, and driver's License number (which contains a code for dates of birth and other personally identifying information) from the motor vehicle records maintained by the Illinois Secretary of State.

c.      Evan has not expressly consented to the release of his personal information from a motor vehicle record as required by the DPPA.

d.      Defendant used the personal information for his own personal use in that

e.      Importantly, Defendant Petitgout had no reason to believe that a crime had occurred or that the obtaining or using or disclosure of the personal information Petitgout

9

obtained was connected in any way to any criminal investigation or otherwise a lawful use of the LEADS system.

30.     Petitgout has obtained personal information, as defined in the DPPA, related to Evan without obtaining the written consent of any such person for purposes not authorized.

31.     From and before August 16, 2023 to the date of the filing of this Complaint, both plaintiffs have been a resident of the Central District of Illinois and an owner of vehicles registered in the State of Illinois and holder of an Illinois Drivers' license, each constituting a "motor vehicle operators permit," referenced in the DPPA, 18 U.S.C. § 2725(1).

32.     Evan's company, SCHMALSHOF FAMILY TRANSPORT LLC, is and has also been the owner and operator of automobiles registered in Illinois, for which there is a "motor vehicle title" and "Motor vehicle registration," referenced in the DPPA, 18 U.S.C. § 2725(1). Evan's Illinois Drivers' License, and Schmalshof Family Transport, LLC's motor vehicle title and motor vehicle registration all contain "personal information" concerning both Plaintiffs, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Evans' name, address and driver's license number.

33.     Defendant admitted that he obtained the personal information of Evan from motor vehicle records for a use not permitted.

34.     After the effective date of the 1999 amendment to the DPPA (June 1, 2000), Defendant unlawfully obtained "personal information" of Evan`s, including Evan`s name, from the Illinois Secretary of State's "motor vehicle records" in violation of the DPPA, via the Illinois LEADS systems.

35. Petitgout's violations of the DPPA have been committed "knowingly" within the meaning of the DPPA 18 U.S.C. §2724(b). In the context of the DPPA, to act knowingly is to act with the knowledge of the facts that constitute the offense. See *Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 1946 (1998) ("Unless the text of the statute dictates a different result, the term knowingly merely requires proof of knowledge of the facts that constitute the offense.") Defendant knows that obtaining personal information pertaining to Evans from the Illinois Secretary of State's records for purposes not authorized by the DPPA is a violation of the Act and he has been trained on the use of LEADS which includes study of the DPPA.

36. The information obtained by the Defendant from "motor vehicle records" contains "personal information" within the meaning of the DPPA, 18 U.S.C. §2725(3).

37. Defendant obtained, and/or used such information for purposes not authorized by the DPPA. Each record of "personal information" knowingly obtained, disclosed and used for unauthorized purposes from motor vehicle records is a separate and distinct violation of the DPPA, remediable under DPPA, 18 USC §2724.

Wherefore, Evan prays that this honorable court grant judgment on Evans' behalf to the following effect:

A. Granting judgment in favor of Plaintiffs against Defendants in the amount of $2,500 for each instance in which the Defendant obtained, disclosed or used personal information concerning the Evans for purposes not authorized by the DPPA;

B. Punitive damages as provided in the DPPA;

C. Attorney fees and costs incurred; and

D. Such other relief as this Court deems appropriate and just.

11

## Count III
### Tortious Interference with a Contract

38.    Evan restates and re-alleges paragraphs 1-37 as if fully stated herein in their entirety.

39.    At all times relevant to this complaint, Petitgout and McDonough County were aware of Evan's employment contract with the Village of Blandinsville to serve as Chief of Police.

40.    Petitgout, with the knowledge that Evan was a Police Chief, unilaterally, in retaliation for Evans truthful statements concerning McDonough County Sheriff's Office, prohibited Evan from delivering up defendants lawfully arrested pursuant to the police powers conferred upon Evan without any lawful authority.

41.    The stripping of Evan's ability to serve up criminal defendants to the county jail has become known to the community and imputes to Evan that he somehow is a criminal thus injuring his reputation and causing injury to Evan.

42.    The stripping of Evan's ability to tender criminal defendants to the county Jail interferes with the functions of Evan's office as Police Chief and his contract accordingly.

43.    Petitgout articulated to the Village of Blandinsville attorney and the Police Committee Chairman that the ability to deliver criminal defendants to the jail and access to criminal databases would be restored if the Village of Blandinsville would terminate Evan from serving as Chief of Police.

44.    There is no adequate remedy at law that would make Evan whole.

45.    Without injunctive relief Evan will continue to suffer irreparable harm.

46.    Issuance of an injunction is in the public interest because the current behavior of Petitgout places the public at risk of violent criminals and detainable individuals under the

12

SAFE-T Act from being delivered up by Evan for further detention and prosecution by the State's Attorney.

47. Petitgout, as McDonough County Sheriff, has a duty to accept criminal defendants arrested within McDonough County from all law enforcement officers, not just the peace officers he likes.

48. Evan, by virtue of being a peace officer, falls within the zone of interest of the entire Criminal Code of the State of Illinois. See 720 ILCS 1 et seq.

49. Absent issuance of a Writ of Mandamus, Plaintiff, Evan, has no adequate remedy at law.

50. Any balancing of the respective interests of the respective parties weighs heavily in favor of Evan. This is because Petitgout has: A) An obligation under state law to accept into the jail all persons accused of criminal activity arrested without a warrant; for probable cause to be determined by both the State's Attorney and the Court; B) No prejudice can be said to befall Petitgout because he already has a legal obligation to accept such prisoners; and C) the public interest is served by issuing a writ of Mandamus in this case as opposed to releasing criminals into society.

Wherefore, Evan prays that this honorable court grant the following relief:

A) Enter a preliminary injunction prohibiting the Defendants from any further interference with Evans contract, including ordering the Defendant, Petitgout, from desisting the practice of prohibiting Evan from delivering up criminal defendants to the McDonough County Jail.

B) Issue a writ of Mandamus commanding Petitgout to accept all prisoners tendered by peace officers up to the McDonough County Jail.

13

C) Enter a permanent injunction prohibiting the Defendants from any further interference with Evan`s contract, including ordering the Defendant, Petitgout, from desisting the practice of prohibiting Evan from delivering up criminal defendants to the McDonough County Jail.

D) Enjoin Defendants from undertaking any other action to interfere with Evan's function as Police Chief of Blandinsville.

E) Enter judgement against Defendants in favor of Evan.

F) Award Evan Damages for the interference with Evan`s contractual duties to the extent permissible by law.

## Count IV
### Intentional Infliction of Emotional Distress (IIED)

51. Plaintiffs restates and re-alleges paragraphs 1-50 as if fully set forth in this Count IV.

52. Petitgout's conduct as set forth in this complaint was designed to bring about emotional distress in the Evan.

53. Petitgout's conduct as set forth in this complaint was truly outrageous.

54. Petitgout's conduct as set forth in this complaint did in fact cause emotional distress in Evan in that Evan had manifestations of emotional distress including loss of sleep, abdominal pain and other physical symptoms.

Wherefore, Evan prays that this honorable court grant the following relief:

A) Enter judgement against Defendants in favor of Evan.

B) Award Evan Damages for the intentional emotional distress of Evan to the extent permissible by law.

C) For such other and further relief as this honorable court deems just and equitable.

14

## Count V
## False Light Invasion of Privacy

55.    Evan restates and re-alleges paragraphs 1-54 as if fully restated herein in their entirety.

56.    In publishing to others including members of the Board of Trustees of the Village of Blandinsville and its Attorney that Evan could not access the McDonough County Jail and stripping him of access to law enforcement databases, Petitgout imputed that Evan was not fit for his position as a Chief of Police of the Blandinsville Police Department.

57.    Petitgout's conduct and statements further imputed to the law enforcement community the false contention that Evan was unfit to serve as a law enforcement official.

58.    As a result of Petitgout's conduct and statements Evan has been placed in a false light.

59.    As a result of Petitgout's conduct and statements Evan suffered an injury to his reputation.

60.    On January 26, 2024, Petitgout in his official capacity as sheriff terminated Evan's employment with the Sheriff's office.

61.    After Petitgout terminated Evan, Petitgout then published to various media outlets the termination of Evan, falsely imputing to Evan misconduct.

62.    On or about February 2, 2024, Tri-States public radio repeated the publication of Petitgout concerning Evan's termination.

63.    On or about February 6, 2024, Community News Brief published a story repeating Petitgout's publication concerning the termination of Evan.  Neither publication showed the wrongful nature of Evan's wrongful termination.

64.     The wrongful termination of Evan will force Evan to self defame in applying for any future employment wherein he will have to be truthful and disclose his firing.

Wherefore, Evan prays that this honorable court grant the following relief:

A)  Enter judgement against Defendants in favor of Evan.

B)  Award Evan Damages for the intentional emotional distress of Evan to the extent permissible by law.

C)  For such other and further relief as this honorable court deems just and equitable.

### Count VI
### Claims under 42 U.S.C. 1983:
### *Monell* Claim: Defendants Petitgout and McDonough County

65.     Evan restates and re-alleges paragraphs 1-64 as if fully restated herein in their entirety.

66.     The violations of Evan's constitutional rights under the First Amendment to the United States Constitution, his damages were directly and proximately caused by the actions and/or inactions of Defendant Petitgout, in his official capacity as McDonough County Sheriff, who have, with deliberate indifference:

a.      failed to establish and/or implement policies, practices and procedures to ensure that Evan receive equal treatment under the law;

b.      failed to adequately assess and provide remedies as a Deputy for the abuses served at the hands of Petitgout;

c.      failed to adequately monitor the deteriorating mental and medical health conditions of detainees;

16

d.      failed to ensure through training, supervision and discipline that all Deputies Could reasonably rely upon as the written policies were often overridden by command Staff including Petitgout to encourage actions contrary to written policies;

e.      possessed knowledge of deficiencies in the policies, practices, customs and procedures concerning pursuits and deliberately turned a blind eye to all other Deputies following Petitgout's oral instructions departing from his written policies to these deficiencies.

WHEREFORE, Plaintiff respectfully requests that the Court award Evan damages; any and all other compensatory damages suffered by Evan; punitive damages; attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and such other and further relief as the Court deems just and equitable.

Respectfully Submitted,


By: /s/Daniel Olswang


Dan Olswang
Netzky Olswang Law Group LLC
8605 West Bryn Mawr
Suite 309
Chicago, Illinois 60631-3510

ARDC Attorney No. 6237810

# Group

# Exhibit A