UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| EVAN SCHMALSHOF and SCHMALSHOF FAMILY TRANSPORT LLC, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| McDONOUGH COUNTY and NICHOLAS PETITGOUT, individually and not in his official capacity, | ) ) ) ) ) |
| Defendants. | ) |

Case No. 3:24-cv-03071-SLD

ORDER

Before the Court is a motion to dismiss filed by Defendants McDonough County and Nicholas Petitgout, ECF No. 7.  For the reasons set forth below, the motion is GRANTED.

**BACKGROUND[1]**

Plaintiffs Evan Schmalshof and Schmalshof Family Transport LLC ("Family Transport") bring this action against McDonough County and Petitgout, alleging that Defendants deprived Schmalshof of his constitutional right to free speech, effectuated a "scheme and artifice to harass" and "systematically oppress[]" him, interfered with his employment contract, and improperly obtained personal information about him and his company, Family Transport. Compl. ¶ 1, ECF No. 1.  Petitgout is the Sheriff of McDonough County, Illinois.  Schmalshof is the Chief of Police for the Village of Blandinsville ("Blandinsville") and previously worked as a sheriff's deputy for McDonough County.

---

[1] When reviewing a motion to dismiss, the court "accept[s] as true all well-pleaded facts in the complaint and draw[s] reasonable inferences in favor of the plaintiff."  *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022).  The factual background is drawn from the Complaint, ECF No. 1.

1

While working as a sheriff's deputy, Schmalshof made truthful statements in an interview that reflected poorly on Petitgout and the McDonough County Sheriff's Office ("Sheriff's Office"). In retaliation, Petitgout began harassing Schmalshof by forbidding him from speaking about the Sheriff's Office or identifying himself as a sheriff's deputy, prohibiting his colleagues from contacting him, blocking him from the Sheriff's Office's Facebook page, threatening his union representative with retaliation, prohibiting him from delivering defendants to the McDonough County Jail ("County Jail"), blocking the entire Blandinsville Police Department from accessing criminal databases and the McDonough County warrant list, and telling Blandinsville officials that his privileges would be restored if they terminated him as Chief of Police.

On August 16, 2023, Petitgout accessed the Illinois State Police Law Enforcement Agencies Data System ("LEADS"), looked up Family Transport's license plates and Schmalshof's driver license, and obtained personal information about both Plaintiffs which he improperly used for his own personal use. On January 26, 2024, Petitgout terminated Schmalshof and then published his termination to various media outlets, falsely imputing misconduct to Schmalshof.

Plaintiffs bring six claims under federal and Illinois state law: Count I: Violation of First Amendment and Retaliation; Count II: Violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721–2725; Count III: Tortious Interference with Contract; Count IV: Intentional Infliction of Emotional Distress ("IIED"); Count V: False Light Invasion of Privacy; and Count VI: Deprivation of First Amendment Rights Under *Monell*. Schmalshof brings all six claims on behalf of himself, and the only claim expressly brought by Family Transport is violation of the DPPA.

Defendants move to dismiss under Rules 12(b)(1) and (6), arguing that Plaintiffs fail to state a claim upon which relief can be granted, the Court lacks subject-matter jurisdiction over the DPPA claim because Plaintiffs do not allege injury-in-fact, and Petitgout is entitled to immunity. *See generally* Mem. L. Supp. Mot. Dismiss, ECF No. 8. Plaintiffs did not respond to Defendants' motion to dismiss.

## DISCUSSION

### I.     Legal Standard

Rule 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." "The purpose of a motion to dismiss is to challenge the sufficiency of the complaint, not to decide its merits." *Dutch Valley Growers, Inc. v. Rietveld*, No. 16-2085, 2016 WL 10789393, at *2 (C.D. Ill. Aug. 29, 2016). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "[D]etailed factual allegations are unnecessary," *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016), but the complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Where, as here, a plaintiff fails to respond to a motion to dismiss, the court must "look[] to the complaint itself to determine the sufficiency of the pleadings." *Marcure v. Lynn*, 992 F.3d 625, 633 n.5 (7th Cir. 2021). "Rule 12(b)(6) prevents courts from granting unopposed motions solely because there is no response." *Id.* at 633. Because "[i]t is the defendant's burden to establish the complaint's insufficiency," *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020), the court must address the merits of a Rule 12(b)(6) motion even when unopposed.

3

When deciding on a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences from those factual allegations in the plaintiff's favor. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to [the] presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A motion to dismiss under Rule 12(b)(1) asserts that the court lacks subject-matter jurisdiction. *Mohammad v. IndyMac Bank, F.S.B./One W. Bank, F.S.B.*, No. 16 C 7241, 2018 WL 1252112, at *3 (N.D. Ill. Mar. 12, 2018). "[F]ederal courts have subject-matter jurisdiction only if constitutional standing requirements also are satisfied," *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018), and "[t]he party invoking federal jurisdiction bears the burden of establishing the[] elements" of Article III standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

## II.     Analysis

### a.  Count I: First Amendment Retaliation

To succeed on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in constitutionally protected speech, (2) an adverse action was taken against him that was "likely to deter him from exercising his First Amendment rights," and (3) his speech was at least a motivating factor of the adverse action. *Fehlman v. Mankowski*, 74 F.4th 872, 875 (7th Cir. 2023). Whether a public employee's speech is constitutionally protected depends "on whether the speech was made in the employee's capacity as an employee or as a private citizen."

4

*Id.* "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Schmalshof's claim for First Amendment retaliation arises out of statements he made in which he "provided truthful information when he was interviewed concerning the reality of the verbal instructions and treatment of matters contrary to the written policies of the McDonough County Sheriff's Office." Compl. ¶ 10. Defendants argue that this claim should be dismissed because Schmalshof has not made a *prima facie* showing that he engaged in protected activity. Mem. L. Supp. Mot. Dismiss 5–8. They assert that the facts in the Complaint are "remarkably thin" and "fail[] to cross the threshold from speculative possibility to plausible suggestion" that Schmalshof made his speech as a private citizen rather than a public employee. *Id.* at 6–7. The Court agrees.

"The threshold inquiry" the Court must make "is whether [Schmalshof] was speaking as a citizen." *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 538 (7th Cir. 2016) (quotation marks omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). It is not enough for Schmalshof to allege a "mere speculative possibility" that he spoke as a citizen, *Abcarian v. McDonald*, 617 F.3d 931, 937 (7th Cir. 2010)—instead he "need[s] to plead specific facts that plausibly suggest[] h[is] speech was *not* made pursuant to h[is] [sheriff's deputy] role, but rather was made in h[is] capacity as a private citizen," *Hatcher*, 829 F.3d at 538. Here, the *only* allegation Schmalshof provides about the "the context in which [his] statements were made," *Abcarian*, 617 F.3d at 937, is that his speech occurred "when he was interviewed," Compl. ¶ 10. With just that bare allegation, the Court can only "speculate

5

[about] whether he spoke as a citizen or in the course of his employment." *Abcarian*, 617 F.3d at 937. Accordingly, Count I is DISMISSED.

### b. Count II: Violation of the Driver's Privacy Protection Act

The DPPA makes it "unlawful for any person knowingly to obtain or disclose personal information[] from a motor vehicle record," with certain enumerated exceptions not relevant here. 18 U.S.C. § 2722(a); *see also id.* §§ 2721(b)(1)–(14) (listing the permissible uses). The statute defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." *Id.* § 2725(3). "The DPPA provides a private right of action for any individual whose personal information has been obtained or disclosed in violation of the [statute]." *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 941 (7th Cir. 2015) (citing 18 U.S.C. § 2724(a)). But a statutory violation, without more, does not constitute a concrete injury sufficient to confer Article III standing. *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 979 (7th Cir. 2023); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342–43 (2016).

Plaintiffs allege that on August 16, 2023, Petitgout used LEADS to obtain personal information about them, specifically, "the make, year, vehicle identification number, and owner's name, address, zip code, and driver's license number (which contains a code for dates of birth and other personally identifying information)." Compl. ¶¶ 25, 29. Plaintiffs assert that they did not give their express consent to the use of this information to Defendants or the State of Illinois. *Id.* ¶¶ 21, 24; *see* 18 U.S.C. § 2725(5) (defining "express consent"). Plaintiffs further allege that Petitgout used the personal information he improperly obtained for his personal use. *See, e.g.*, Compl. ¶ 29(d).

6

Defendants argue that Plaintiffs' DPPA claim should be dismissed because Plaintiffs have not alleged an injury-in-fact fairly traceable to the alleged DPPA violation. Mem. L. Supp. Mot. Dismiss 8–9. The Court agrees.

"[S]tanding is an essential ingredient of subject-matter jurisdiction," *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020), and "[a] plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct . . . ," *California v. Texas*, 593 U.S. 659, 668–69 (2021) (quotation marks omitted).

Here, Plaintiffs tediously explain how Petitgout, a "person," "knowingly" violated the DPPA when he obtained "personal information" even though Plaintiffs did not give "express consent." Compl. ¶¶ 19–37. But there are no allegations that "Plaintiffs suffered *any* injury as a result of" the alleged DPPA violation. Mem. L. Supp. Mot. Dismiss 8. Even assuming that Petitgout's actions as alleged in the Complaint constitute a violation of the DPPA, it is well established that a bare statutory violation does not amount to a concrete and particularized injury.

> For standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.

*TransUnion*, 594 U.S. at 426–27. Plaintiffs have failed to allege that they suffered a concrete injury as a result of Petitgout's violation of the DPPA and they therefore have no standing to sue. Accordingly, Count II is DISMISSED.

    c. **Count III: Tortious Interference with Contract**

To state a claim for tortious interference with contract under Illinois law, a plaintiff must plausibly allege:

7

> (1) that a valid and enforceable contract existed between the plaintiff and another party, (2) that the defendant was aware of that contract relation, (3) that the defendant intentionally and unjustifiably induced a breach of the contract, (4) that there was a subsequent breach of the contract by the other party that was caused by the defendant's wrongful conduct, and (5) that the plaintiff suffered damages.

*Law Offs. of Charles Chejfec, LLC v. Franz*, 232 N.E.3d 1111, 1122 (Ill. App. Ct. 2023).

Schmalshof alleges that Petitgout interfered with his employment contract with Blandinsville by prohibiting him from delivering up criminal defendants to the County Jail and accessing law enforcement databases, and by telling Blandinsville officials that those privileges would be restored if they terminated him as Chief of Police. Compl. ¶¶ 39–43. He also asserts that "the stripping of [his] ability to serve up criminal defendants to the [C]ounty [J]ail has become known to the community and imputes to [Schmalshof] that he somehow is a criminal thus injuring his reputation and causing injury to [him]." *Id.* ¶ 41. Defendants argue that this claim should be dismissed because the Complaint does not allege that Schmalshof's employment contract with Blandinsville was actually breached. Mem. L. Supp. Mot. Dismiss 11.

The Court finds that Schmalshof has not plausibly alleged breach and therefore cannot maintain his tortious interference with contract claim. Illinois caselaw is clear that the "breach" element requires "more than conduct rendering performance of the contract more burdensome"—there must be "either a breach of contract, termination of the contractual relations, or rendering performance impossible." *George A. Fuller Co., a Div. of Northrop Corp. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330–31 (7th Cir. 1983). Additionally, "Illinois law dictates that any tortious interference by a defendant . . . must have been directed toward the third party, not the plaintiff." *LaSalle Bank Nat'l Ass'n v. Moran Foods, Inc.*, 477 F. Supp. 2d 932, 939 (N.D. Ill. 2007). The only act Schmalshof alleges that Petitgout directed toward the third party, *i.e.*, Blandinsville, is telling officials that Schmalshof's privileges would

8

be reinstated if they fired him as Chief of Police. Compl. ¶ 43. Schmalshof does not allege that his contract was terminated or that performance was made impossible. *See Herman v. Prudence Mut. Cas. Co.*, 244 N.E.2d 809, 814 (Ill. 1969) ("[I]n the absence of factual allegations that the employment contracts were breached or terminated with resulting damage to plaintiffs, the complaint fails to state a cause of action for damages for malicious interference with contract."). Accordingly, Count III is DISMISSED. Because Schmalshof fails to state a claim, the Court need not address his requests for specific remedies. *See* Compl. ¶¶ 44–50.

### d. Count IV: Intentional Infliction of Emotional Distress

To state an IIED claim under Illinois law, a plaintiff must plausibly allege:

> (1) that the defendant's conduct was truly extreme and outrageous, (2) that the defendant either intended that his conduct would cause severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) that the defendant's conduct did in fact cause severe emotional distress.

*Taliani v. Resurreccion*, 115 N.E.3d 1245, 1254 (Ill. App. Ct. 2018). "[T]o qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003). The standard for what constitutes "extreme and outrageous" is high, and "the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or trivialities." *Benton v. Little League Baseball, Inc.*, 181 N.E.3d 902, 926 (Ill. App. Ct. 2020).

Schmalshof makes the conclusory allegation that "Petitgout's conduct as set forth in this [C]omplaint was truly outrageous." Compl. ¶ 53. Defendants argue that none of Petitgout's alleged actions "can be fairly characterized as beyond the bounds of societal decency." Mem. L. Supp. Mot. Dismiss 12–13.

9

One factor that weighs in favor of Petitgout's conduct being deemed extreme and outrageous is the fact that he occupied a position of authority over Schmalshof. *See Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992) ("[T]he extreme and outrageous nature of the conduct may arise from the defendant's abuse of some position which gives him actual or apparent authority over the plaintiff or the power to affect the plaintiff's interests."). But simply holding a position of authority is not sufficient to support liability—in the employer-employee relationship, "employers often and necessarily take actions during the course of business that result in emotional distress" but "an employer's conduct [must] be truly egregious before it may give rise to liability." *Ulm v. Mem'l Med. Ctr.*, 964 N.E.2d 632, 642 (Ill. App. Ct. 2012) (alterations and quotation marks omitted); *see, e.g.*, *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251–52 (Ill. App. Ct. 1990) (finding extreme and outrageous conduct where an employer engaged in a persistent pattern of pressuring an employee for dates, offering to pay her money for sexual favors, engaging in harassing behaviors after she was fired, and threatening to kill and rape her).

Here, Schmalshof alleges that Petitgout told other deputy sheriffs not to communicate with him, blocked him from the Facebook page, prohibited him from delivering defendants to the County Jail, and blocked him from accessing a database and warrant list. These allegations do not rise above "mere insults, indignities, threats, annoyances, petty oppressions, or trivialities," *Benton*, 181 N.E.3d at 926, and are therefore insufficient to support an IIED claim. Schmalshof needed to allege that Petitgout's conduct went "beyond all possible bounds of decency, such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage," *id.*, but he failed to do so. Accordingly, Count IV is DISMISSED.

### e. Count V: False Light Invasion of Privacy

To state a claim for false light invasion of privacy under Illinois law, a plaintiff must allege that (1) he was placed in a false light before the public as a result of the defendant's actions, (2) the false light in which he was placed would be highly offensive to a reasonable person, and (3) the defendant acted with actual malice, *i.e.*, with actual knowledge that the statements were false or with reckless disregard for whether the statements were true or false. *Benton*, 181 N.E.3d at 933. "[T]he most basic element of a false light cause of action" is a *false* statement, *Salamone v. Hollinger Int'l, Inc.*, 807 N.E.2d 1086, 1093 (Ill. App. Ct. 2004), and therefore "a false light claim cannot be maintained absent an allegation that some specific factual statement was false," *Brown v. Montgomery*, No. 20 CV 04893, 2024 WL 1243669, at *13 (N.D. Ill. Mar. 22, 2024).

Schmalshof bases his false light claim on the following actions by Petitgout: Petitgout published to Blandinsville officials that Schmalshof was prohibited from delivering up defendants to the County Jail and accessing databases, and Petitgout published to various media outlets that Schmalshof had been terminated. Compl. ¶¶ 55–64. Schmalshof alleges that these statements imputed that he was not fit to serve as a law enforcement officer or Chief of Police and that he had engaged in misconduct or was himself a criminal. *Id.* ¶¶ 41, 56–57, 61. Defendants argue that Schmalshof's claim fails because the Complaint does not allege that Petitgout made any specific false statement and because Petitgout is entitled to absolute privilege because he was acting as a government official within his scope of responsibility. Mem. L. Supp. Mot. Dismiss 13–15. The Court agrees.

First, Schmalshof alleges no factually *false* statements made by Petitgout—according to the Complaint, it is true that Schmalshof was prohibited from delivering up defendants to the

11

County Jail and accessing databases, and it is true that he was terminated. *Cf. Cash v. VanVickle*, No. 19 C 02955, 2020 WL 11039167, at *4 (N.D. Ill. Nov. 18, 2020) ("[S]imply stating an employee was terminated does not impute an inability to perform his job duties or that he lacks integrity to do so . . . ."). Under Illinois law, substantial truth is a defense to a false light claim, *Osundairo v. Glandian*, No. 19-cv-02727, 2024 WL 5186922, at *6 (N.D. Ill. Dec. 20, 2024), and "[t]o be substantially true, a statement need not be accurate in every detail as long as the 'gist' or 'sting' of the statement is true," *Black v. Wrigley*, No. 17 C 101, 2019 WL 2433740, at *4 (N.D. Ill. June 11, 2019). Schmalshof was in fact placed in a *true* light by Petitgout's statements. "The fact that the light might have been unflattering doesn't mean that it was false. It's a *false* light claim, not an *unflattering* light claim." *Love v. Simmons*, No. 23-cv-2392, 2024 WL 809107, at *7 (N.D. Ill. Feb. 27, 2024); *cf. id.* at *5 ("Sometimes the truth hurts, and when the truth hurts, it isn't defamation.").

And second, as an executive official, Petitgout is entitled to the defense of absolute privilege for "statements which are legitimately related to matters committed to his responsibility." *Blair v. Walker*, 349 N.E.2d 385, 389 (Ill. 1976)); *see also Raab v. County of Jo Daviess*, No. 08 C 50087, 2008 WL 11619146, at *3 (N.D. Ill. Nov. 4, 2008) ("Absolute privilege protects public officials from liability for statements made within the scope of their duties."). Illinois law vests Petitgout with the "custody and care" of the County Jail, *see* 55 ILCS 5/3-6017, and therefore a statement about who is allowed to access the jail and criminal databases is "within the scope of [his] official duties," *Jones v. Lake Cnty. Sheriff's Off.*, No. 20-cv-05798, 2023 WL 2631659, at *5 (N.D. Ill. Mar. 24, 2023), *argued*, No. 23-1769 (7th Cir. Dec. 4, 2023). Additionally, "[h]iring and firing decisions, especially regarding issues such as integrity, are clearly reasonably related to [Petitgout]'s role" as sheriff, *id.*, and accordingly,

12

Petitgout's statements to various media outlets about Schmalshof's termination are protected by an absolute privilege. *Cf. Barr v. Matteo*, 360 U.S. 564, 574–75 (1959) (holding that the executive official enjoyed an absolute privilege from civil damages suit for statements made in a press release regarding personnel decisions). Count V is DISMISSED.

### f. Count VI: Deprivation of First Amendment Rights Under *Monell*

Schmalshof brings a claim pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), based on Defendants' alleged violations of his First Amendment rights. Compl. ¶¶ 65–66. To bring a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not allow a local governmental entity to be held vicariously liable for constitutional violations committed by its employees, *Monell*, 436 U.S. at 691, but a local governmental entity can be held liable when it is "directly responsible for the constitutional deprivation." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019).

Whether a plaintiff brings a claim under § 1983 or *Monell*, there must be an underlying constitutional violation—and here, that fundamental element is missing. Because the Court found that Schmalshof does not state a claim for First Amendment retaliation, *see supra* § II.a., he has not shown that he suffered any constitutional violation, and therefore cannot sustain a claim under § 1983 or *Monell*. Accordingly, Count VI is DISMISSED.

## CONCLUSION

For the foregoing reasons, Defendants McDonough County and Nicholas Petitgout's Motion to Dismiss, ECF No. 7, is GRANTED. Plaintiffs Evan Schmalshof and Schmalshof

13

Family Transport LLC did not respond to the motion to dismiss nor did they request leave to amend the complaint, and the Court will not *sua sponte* grant such leave. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006). The Complaint, ECF No. 1, is DISMISSED WITHOUT PREJUDICE. The Clerk is directed to enter judgment and close the case.

    Entered this 5th day of March, 2025.

                                                    s/ Sara Darrow
                                                    SARA DARROW
                                                    CHIEF UNITED STATES DISTRICT JUDGE